## COOPER v. CHARLESTON & WESTERN CAR. RY. CO.

1. PLEADINGS—RAILROADS—NEGLIGENCE—CROSSINGS — SIGNALS.—This complaint does not state a cause of action for failure to give signals at a crossing, but an action for negligence at common law.

2. RAILROADS—SIGNALS.—It is the duty of those in charge of railway trains to give notice of their approach to all points of known or reasonably apprehended danger.

3. IBID.—IBID.—Do the signalling statutes apply to crossings at different levels?

4. IBID.—IBID.—At common law it is not negligence in railroad company to fail to give signals on approaching a crossing under its track.

Before WATTS, J., Laurens, July, 1902. Affirmed.

Action by Dollie Cooper against Charleston and Western Carolina Railway Company. From judgment of nonsuit, plaintiff appeals.

*Mr. F. P. McGowan,* for appellant, cites : *If there was any cause of action, nonsuit should not have been granted:* 61 S. C., 404, 500 ; 25 S. C., 53 ; 43 S. C., 221; Code, 1902, 2132, 2133, 2139 ; 1 Rorer, 552; 13 N. Y., 78. *At common law, railroads must give signals in passing over highways:* 10 Rich., 227 ; 57 S. C., 205 ; 52 S. C., 323 ; 58 S. C., 70 ; 59 Pa. St., 259. *Proximate or remote cause is for jury:* 62 S. C., 130 ; 55 S. C., 422 ; 60 S. C., 208. *Railroad must give notice of its approach at points of known or reasonably apprehended danger:* 8 Ency., 2 ed., 412.

*Mr. S. J. Simpson,* contra, cites : *Statute does not apply to overhead or undergrade crossings:* 39 S. C., 517 ; 61 S. C., 497. *At common law, signals at such crossings are not required:* 22 L. R. A., 680 ; 114 Mass., 350 ; 4 Am. Neg. R., 582 ; 132 Pa., 304.

*Messrs. Simpson & Cooper,* also contra, cite : *There must be an actual collision, to bring case within the statute:* 33 S. C., 139 ; 39 S. C., 517 ; 61 S. C., 497. *Common law only requires signals at grade crossings:* 4 Ency., 1 ed., 421; 118 Mass., 350 ; 2 Woods R. R. Law, 3232.

February 11, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an appeal from an order of nonsuit. In order to understand clearly the issues involved, it will be necessary to refer to the second and third paragraphs of the complaint, which are as follows :

"II. That the public highway leading from Laurens Court House towards Augusta, Ga., at or near Badgett's Mill place, in said county and State, descends a steep hill to Burnt Mill Creek, and ascends a steep hill from said creek,

and has on either side of said descent and ascent rough and dangerous precipices, and at or near said place, the track and trestle of the defendant passes over and across said highway, having a narrow passage through the timbers of said trestle for the public highway and the travel along the same, and that a traveler upon said highway in passing said locality is unable to see and has difficulty of hearing approaching trains.

"III. That on or about the 16th day of June, 1902, while the plaintiff, in company with another lady, was traveling said highway from Laurens Court House towards her home in said county, in a buggy drawn by a mule, and having arrived at the place aforesaid where the defendant's track and trestle passes over and across said highway, and being wholly unaware of any approaching train then and there, the defendant, without giving any warning of its approaching train, so carelessly and negligently operated and run one of its locomotives with a freight train attached thereto on said trestle and over and across said highway, that the said mule driven by the plaintiff, while in the act of crossing under said railroad track and through said trestle, became so frightened and panic-stricken that it caused the plaintiff to be suddenly and violently thrown from the buggy, giving to plaintiff a painful and serious cut across the face and head and causing other and grave injuries to her person."

The defendant denied the material allegations of the complaint and set up the defense of contributory negligence. At the close of the plaintiff's testimony, the defendant made a motion for a nonsuit, on the following grounds:

"1. There should be a nonsuit, because this action is not brought under the statute, and on that ground there is no statutory violation of duty on the part of the defendant.

"2. In no possible view of this case can plaintiff rely upon any allegation of negligence in the failure to give signals, because he has not alleged that as one of the causes of the injury.

"3. Even if this action is intended to be brought under the statute, there must be a nonsuit, for the reason that the stat-

ute of South Carolina relating to signals at crossings does not apply to crossings of this character.

"4. It is not the duty of a railway company at common law to give signals by blowing its whistle or ringing its bell at crossings of this character, and, therefore, the failure to do so was not negligence in this case, and a nonsuit should be granted on this ground.

"5. There is not a particle of testimony to show any negligence, unless in the failure to give signals, and this being true, nonsuit should be granted.

"6. Even if the evidence shows any negligence at all, it was the remote and not the proximate cause of the injury, and, therefore, there should be a nonsuit."

In granting the order of nonsuit, his Honor, the presiding Judge, said: "The way I construe this complaint, it is brought under the statute, neglecting to give statutory signals. They allege that the train went over the trestle without giving any warning of the approaching train. Now, if you take it under the common law, as I understand it, the only thing necessary for a train running over its road, is simply to keep an ordinary lookout—observe due care and caution not to collide with any one. Where they are running over their road, the common law imposes upon them the obligation to keep an ordinary lookout, so as not to collide with anybody." He also stated at length the reasons why the action could not be sustained under the statute.

The appellant's first exception is as follows: "I. Because his Honor erred in holding that the action was brought under the statute requiring railroads to give signals, and that there was no cause of action, unless there was a collision at a crossing." His Honor's construction of the complaint was erroneous, for the following reasons: 1. The complaint makes no reference whatever to the statute. 2. It does not allege that the plaintiff was injured by collision with the engine or cars of the defendant. 3. It does not allege that the plaintiff was injured at such a crossing as is contemplated by the statute. 4. It does not allege that the

engineer or fireman failed to ring the bell or sound the whistle at the distance of at least five hundred yards from the place where the railroad crosses any public highway, street or traveled place, and that the bell was not kept ringing or the whistle sounding in the manner provided by statute.    5. Section 2 of an act entitled "an act to regulate the practice in the Courts of this State, in actions *ex delicto* for damages," approved 21st February, 1898, 22 St., 693, is as follows: "2. That in all cases where two or more acts of negligence or other wrongs are set forth in the complaint as causing or contributing to the injury for which such suit is brought, the party plaintiff in such suit shall not be required to state such several acts separately, nor shall such party be required to elect upon which he will go to trial, but shall be entitled to submit his whole case to the jury, under the instruction of the Court, and to recover such damages as he has sustained, whether such damages arose from one or another, or all of such acts or wrongs, alleged in the complaint." This act gave the plaintiff the right to allege in her complaint acts of negligence at common law as well as those arising under the statute.    The acts of negligence set out in the complaint are appropriate to an action at common law.    Therefore, his Honor erred, in any event, when he ruled that this action was brought exclusively under the statute.

The second exception assigns error as follows: "II. His Honor erred in holding that at common law a railroad was only required to keep an ordinary lookout, so as not to collide with any one, and that it was not required to ring its bell or blow its whistle before running its train over and across a public highway." In 8 Enc. of Law, 412, the rule is thus stated: "Independently of statute, it is the duty of those in charge of a train to give notice of its approach at all points of known or reasonably apprehended danger." The cases of *Murray* v. *R. R. Co.,* 10 Rich., 227; *Fletcher* v. *R. R. Co.,* 57 S. C., 205, 35 S. E. R., 513; *Mack* v. *R. R. Co.,* 52 S. C., 323, 29 S. E. R., 905, and *Mason* v. *R. R. Co.,* 58 S. C., 70, 37 S. E. R., 226, lend support to this

statement of the law. The presiding Judge, therefore, stated the doctrine too broadly.

The third assignment of error is as follows: "III. He erred in holding that the statutes requiring signals applies only where a railroad crosses a highway on the same level, and not where the railroad crosses the highway on a trestle." We have already shown that this is not an action arising under the statute; therefore, the requirements of the statute are not properly before the Court for consideration.

The fourth exception assigns error as follows: "IV. He erred in not holding that sec. 2132 of Townsend's Code requires railroads to blow the whistle or ring the bell five hundred yards before crossing on a different level." What has just been said is applicable to this exception.

The fifth, sixth and seventh exceptions are as follows: "V. He should have held independently of the statute, that the common law required the defendant to give some signal of the approach of its train to a public crossing, although on a different level, in order for the public upon the highway to keep out of danger. VI. He erred in holding that the failure of defendant to give signals of the approach of its trains and the running of its trains was not the proximate cause of the injury. VII. He should have held that the defendant was required to give some warning of the approach of its train, so as not to frighten the animals of the traveling public, and there was testimony tending to show that the negligence of defendant in not giving any signal and in the rapid running of its train, was the proximate cause of the injury, and the case should have been submitted to the jury."

These exceptions will be considered in connection with the additional grounds upon which the respondent relies for sustaining the order of nonsuit, which are as follows: "1. Even if plaintiff's action is not brought under the statute, but at common law, she cannot recover, because it is not the duty of the defendant to give any signal on approaching crossings

under its tracks, and the failure to do so was, therefore, not negligence. 2. Even if the defendant was bound at common law to give a signal, the failure to give it was not the proximate cause of the injury in this case. Under the statute, a plaintiff may recover, if the failure to give signals at crossings contributes even remotely to the injury. This is not true in an action at common law; but in such cases the failure to give signals must be the proximate cause of the injury. This was not proven to be the case here. 3. In no possible view of this case, whether brought at common law or under the statute, was there any evidence tending to show that any negligent act of the defendant was the approximate cause of the injury." In the case of *Jenson* v. *Ry. Co.*, 22 L. R. A. (Wis.), 680, the Court, in discussing a crossing similar to that described in the complaint, uses the following language: "Such crossings are to be encouraged, in order to secure the safety and security of the public, as crossings at grade are always dangerous. * * * All the statutory regulations and liabilities on the subject of railroad crossings apply only to such as are constructed at even grade with the highways * * * Common reason teaches that this crossing is very different from the common railroad crossing at the grade of the highway, not only in fact, but in all its incidents and relations to the traveling public. There is no danger at such a crossing of any collision of railroad trains or cars with man, beast or vehicle on the highway. It cannot be the direct cause of any physical injury to any person or thing on the highway. The train passing over this bridge can cause no injury to persons or property on the highway other than or different from their injury while passing on a highway parallel to the railroad. The only possible injury a railroad train can inflict on persons or property in the highway is by frightening horses while drawing vehicles or being ridden, and causing them to run away and do damage, as in this case. Only horses unused to such a place would be frightened, and only horses hard to hold or not well subdued would run away or get beyond the control of the driver; so that it is not

common that any injury would happen even from this cause. It is certainly no wrong for the train to be run over such bridges in the usual and ordinary way, and even in this way some horses going under the bridge or being near it at the same time, might be frightened by it. The trains must necessarily make considerable noise going over the bridge. They cannot be run without it. It is not by any means certain that a train would make less noise going over slowly than faster. What degree of noise must it make to frighten horses? A horse liable to be frightened would be by the train passing over the bridge at any rate of speed. There are too many contingencies, conditions and uncertainties about it to make it a rule of law, that a high rate of speed would be the proximate cause of an injury caused by a horse running away through fright, from the noise of the train. To be a rule of law, the injury from such a cause must not only be proximate, but usual or common, and to be expected, or that could be anticipated * * * The danger from such bridges of frightening horses is no greater in fact and no more common than from the railroad running near and parallel to a highway. It would seem to be no more reasonable to establish a rate of speed for the trains in passing such places in one case than in the other * * * As to ringing the bell and blowing the whistle, they are only required, if at all, in order to avoid frightening horses, and with that view to warn the traveler on the highway to stop. Where should he stop and how near the bridge? If near the bridge, and his horse is liable to be frightened and run away, he will be in a much more dangerous condition than if he should drive on and take his chances, for the horse facing the train, rushing over the bridge, would turn suddenly around to escape danger and upset the carriage. * * * I am not sure but that the company might make itself liable by blowing the whistle and ringing the bell so near such a bridge crossing as to frighten teams passing under it on the highway." We have quoted at length from the foregoing case for the reason that

its reasoning is conclusive of the question under considera-
tion.

The respondent's second additional ground is not properly
before the Court for consideration, as it was not made one of
the grounds of the motion for nonsuit.

The first and third additional grounds are sustained, and
this is sufficient to support the order of nonsuit.

It is the judgment of this Court, that the order of the
Circuit Court be affirmed.

MR. CHIEF JUSTICE POPE *concurs in the result.*